LOTTINGER, Judge.
This is a wrongful death suit by the parents of Roy Joseph Savoie. The Trial Court ruled in favor of the defendants, and from this judgment the plaintiffs have appealed. We have studied the record in this proceeding and the reasons for judgment by the Trial Judge. Said reasons by the Trial Court correctly state the facts as presented by the record in this proceeding, and we agree with the judgment as rendered, and because of this, we adopt the written reasons for judgment, as follows:
*393 “Plaintiffs, the parents of Roy Joseph Savoie, filed this suit against John Lirette, Universal Iron Works and The Travelers Insurance Company for wrongful death of their son, Roy Joseph Savoie. Plaintiffs have alleged that the decedent, on or about May 12th, 1967, was on the premises of Universal Iron Works when he was ‘grappled’ by two employees of Universal Iron Works armed with shotguns. Plaintiffs further allege that the decedent broke away, got into his car and was shot by one of the defendant employees. Plaintiffs have further alleged that the decedent gave the defendant employees no cause to fear bodily harm or to anticipate any physical threat from the decedent.
“Defendants denied the allegations of the plaintiffs and pleaded in the alternative that the accident was caused by the decedent suddenly and abruptly driving his automobile off, causing the firearm in the hands of the defendant employee to accidentally dislodge. The defendants have also in the alternative pleaded that the decedent was guilty of contributory negligence and assumption of risk.
“The record shows that Universal Iron Works, insured by The Travelers Insurance Company, had been having trouble with prowlers at night stealing equipment from their premises. In order to try to stop the stealing, Universal had two employees who were to remain on location at night as guards or night watchmen.
“On the evening in question, the night that Roy Joseph Savoie was killed, Universal had two employees present, the defendant, John Lirette, and a co-employee, Harvey Chiasson. Both Messrs. Lirette and Chiasson testified that somewhere around 8:30 P.M., they noticed a car driving peculiarly; that the car parked, after driving up and down a few times, near the property; the driver got out and opened his trunk. The driver of the car, which later turned out to be the decedent, Roy Joseph Savoie, opened his trunk two or three times, but slammed it shut after seeing a car coming. The defendant employees continued to watch the decedent as he began to cut certain cable belonging to Universal Iron located on their property and wrapping the cable in a coil. After watching the decedent for sometime and assuring themselves the decedent was attempting to steal property, the defendant employees came out of their hiding place inside the building and witness Chiasson hollered twice to the decedent to halt and stop. The decedent did not heed the warning but ran towards his car.
“We must point out here that the decedent was at all times in a position where he could have been shot had the employees of the defendant had such intentions.
“When he did not heed the warning, witness Chiasson, who had a 4-10 shotgun, fired at the ground. A couple of the pellets ricocheted and struck the decedent on the leg but barely pricked the skin. The decedent ran on to his car, got inside, and by this time Chiasson and Lirette were at the car and had their weapons pointed inside the automobile at the decedent. Lir-ette was on the decedent’s left by the side of his car, and instead of heeding the warnings to halt, the decedent started his automobile and took off at a fast rate of speed, what is commonly referred to as ‘digging out’. The decedent took off so fast that deep ruts were left in the ground, which were verified and identified by other witnesses.
“The Court finds and feels to be a fact that this sudden and abrupt movement of the decedent caused the weapon, a 12-gauge shotgun that Lirette had in his hands, to disengage, and since the weapon was aimed right at the decedent, he was killed almost instantaneously. It is shown that since the decedent attempted to drive off so fast, his car went approximately 300 feet, striking some stacked drill pipe which brought it to a halt.
“The questions that arise are whether or not the parents of the decedent are entitled *394 to a claim for wrongful damages for the death of their son, and if so the extent of damage.
“The Court feels that the defendant employees were justified in having a weapon with them as security and protection. Virtually all night watchmen, guards and alike are armed.
“The Court further feels and it is the law of our state that merely because one is a thief does not give a guard, policeman or night watchman the right to shoot a thief. The law is that sufficient force can only be applied to repel the aggressor. In this case, no effort was made by the decedent to attack the defendant employees and this clearly is not a case of self-defense.
“The Court feels and finds as a fact that the defendant employees were justified in having the gun pointed at the decedent in the car, because not knowing what a thief on a dark night may do or what type of weapon he may have, certainly they were reasonable in pointing the gun at him, ordering him to halt. Certainly one should be allowed to protect themselves or be prepared to protect themselves in such a set of circumstances as existed on the night in question. One is reasonable in assuming that a thief going back to his car could well have a weapon and could well attempt to use it.
“The Court does not feel that there was any negligent action on behalf of John Lir-ette, Universal Iron Works or Travelers Insurance Company to have their employees armed and for one of the employees to place a gun inside of a car ordering a thief at night to stop.
“The Court finds as a fact that the cause of the shotgun dislodging and the death of the decedent was the movement of the decedent’s automobile which threw John Lirette back. This is supported by the testimony of John Lirette and Harvey Chiasson, which is uncontradicted, as well as the other circumstantial evidence surrounding this case.
“There are many cases which have allowed a claim for wrongful death when someone has been shot while committing an act of theft. The Court has read the cases and feels that in the cases where an award was allowed, it is a case of intentional conduct on the one doing the shooting. Such is not the case at hand. We have men who were armed and in the opinion of the Court justifiably so. There was no attempt to shoot the decedent as he could have been shot most readily as he went about his business cutting the cable, or as he could have been shot while running towards the car. The sole and proximate cause of this tragedy was the sudden and abrupt movement of his car and in the utter disregard of the decedent of the warnings given him when he knew or should have known that there was a shotgun pointed right at him. For this reason, we feel that the plaintiffs have failed to show that they have a claim for wrongful death and their actions must be dismissed, with prejudice, and at their cost.”
Going one step further than the Trial Court went, and assuming for the sake of argument that the two watchmen on the yard of Universal Iron Works did not have a right to hold a gun on the decedent, the question still arises whether this was the cause of his death. Even in this situation we feel that this question must be answered in the negative. Regardless, the sole and proximate cause of the death in this case was the decedent’s fast take-off of his automobile. It was this particular act which caused the gun to discharge.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant.
Judgment affirmed.